1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

8

EASTERN DISTRICT OF CALIFORNIA

9
10

| | |
|---|---|
| SEQUOYAH   DESERTHAWK   KIDWELL, also known as Jason Scott Harper,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATIONS, et al.,<br><br>Defendants. | Case No. 1:22-cv-00253-JLT-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED WITHOUT LEAVE TO AMEND<br><br>(ECF No. 16)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

Plaintiff Sequoyah Deserthawk Kidwell is a state prisoner proceeding *pro se* and *in forma pauperis* in this action. (ECF Nos. 1, 11, 16). Plaintiff commenced this action on February 28, 2022, by filing a "petition for writ of mandate," generally accusing Defendants of constitutional and criminal violations and seeking the Court to direct the District Attorney's Office to file criminal charges against the Defendants. (ECF No. 1) (capitalization omitted). Plaintiff filed a "supplement[] to writ of mandate" on April 4, 2022, seeking to add Defendants for aiding and abetting the deprivation of his civil rights and citing 42 U.S.C. § 1983, among other statutes. (ECF No. 9) (capitalization omitted).

On April 21, 2022, the Court directed Plaintiff to file an amended pleading, noting that Local Rule 220 requires pleadings complete in themselves and without reference to a prior pleading. (ECF No. 12). On May 18, 2022, Plaintiff filed an amended complaint, generally

1

accusing Defendants of constitutional and criminal violations and seeking monetary damages and to have criminal charges filed against them. (ECF No. 16). The Court has reviewed Plaintiff's amended complaint and finds some claims duplicative of another pending action. Additionally, the Court concludes that it lacks jurisdiction over any of Plaintiff's claims, that Plaintiff's claims are frivolous, that Plaintiff fails to state any cognizable claim for relief, and that Plaintiff seeks relief against some Defendants immune from suit. Accordingly, the Court will recommend that this action be dismissed without further leave to amend.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

## I.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

As Plaintiff is proceeding *in forma pauperis*, the Court also screens the complaint under 28 U.S.C. § 1915. (ECF No. 5). This statute also requires dismissal of frivolous claims, those that fail to state a cognizable claim, and those seeking monetary relief from immune defendants. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard.  *Id.* at 679. While a plaintiff's allegations are taken as true, courts

"are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II.    BACKGROUND

Given this action's similarity to another pending case, a procedural overview of the two cases is warranted before discussing the specific allegations in the amended complaint. Plaintiff's February 28, 2022, petition for writ of mandate named the following nine Defendants, all prison entities or officials: (1) California Department of Corrections and Rehabilitations (CDCR), (2) California Substance Abuse Treatment Facility and State Prison (CSATF), (3) Theresa Cisneros, (4) Anthony Baer, (5) Anthony Jimenez, (6) Elaine Lopez, (7) Jason Barba, (8) Gilda Lepe, and (9) Joseph Brainard. (ECF No. 1). On March 10, 2022, Plaintiff filed a "criminal complaint" against six of these same Defendants in 1:22-cv-290-JLT-SAB: (1) Theresa Cisneros; (2) Anthony Baer; (3) Anthony Jimenez; (4) Elaine Lopez; (5) Jason Barba; and (6) Joseph Brainard. (1:22-cv-290-JLT-SAB (ECF No. 1)).

Besides sharing six common Defendants, both filings stem from a September 22, 2021 incident at CSATF in which Defendant Anthony Baer ordered Plaintiff and another inmate to be taken into custody and stripped searched. Both allege that Defendants engaged in a conspiracy to target Plaintiff for his legal activities, with Defendants falsifying rules violation report (RVR) documents. And both allege a host of constitutional violations and seek the Defendants' criminal indictment.

Additionally, in both actions, Plaintiff has complained about the characterization of his filings. Here, Plaintiff previously complained that the docket reflected this case as a civil rights action rather than a petition for writ of mandate. (ECF No. 6). And in 1:22-cv-290-JLT-SAB, Plaintiff complained that his criminal complaint had been illegally converted to a civil rights action. (1:22-cv-290-JLT-SAB (ECF No. 4, p. 1)).

In response, this Court noted that Plaintiff, at least as to his supplement, sought more than mandamus relief, as he specifically referenced 42 U.S.C. § 1983. (ECF No. 12). And the Court advised Plaintiff of the legal standards and limitations of seeking mandamus relief, such as the Court's inability to compel action by California state agencies. (*Id.* at 2). Given the unclear nature of Plaintiff's filings, combined with his violation of Local Rule 220, the Court directed him to file an amended pleading, therein clearly indicating the nature of the action, such as petition for writ of mandamus or § 1983 complaint. (*Id.* at 3).

Likewise, in 1:22-cv-290-JLT-SAB, Plaintiff was advised that his criminal complaint was deficient because federal law does not permit private citizens to bring criminal prosecutions. (1:22-cv-290-JLT-SAB (ECF No. 5, pp. 1-2)). Plaintiff filed "objections," which the District Judge construed as seeking reconsideration. (1:22-cv-290-JLT-SAB (ECF Nos. 10, 11)). The District Judge denied reconsideration and reiterated that Plaintiff had no constitutional right to have another person criminally prosecuted. (1:22-cv-290-JLT-SAB (ECF No. 11)).

Following these orders, the Court in 1:22-cv-290-JLT-SAB screened Plaintiff's complaint on May 13, 2022, concluding that Plaintiff failed to state any claim cognizable under § 1983 and again advising Plaintiff that he could not initiate a criminal prosecution against Defendants. (1:22-cv-290-JLT-SAB (ECF No. 14)). Plaintiff was provided with the relevant legal standards and given thirty days to file an amended complaint. On June 10, 2022, Plaintiff filed objections, contending that he has a right to file a criminal complaint and did not intend to file a § 1983 complaint.  (1:22-cv-290-JLT-SAB (ECF No. 15)). On June 16, 2022, the District Judge construed the objections as a motion for reconsideration, denied the motion, and noted that "Plaintiff's remedy is to file an amended complaint in compliance with the court's May 13, 2022 order."  (1:22-cv-290-JLT-SAB (ECF No. 16)).

On May 18, 2022, Plaintiff filed his amended complaint in this case (dated May 15, 2022), purportedly seeking relief for civil rights violations through various criminal statutes. (ECF No. 16). Notably, Plaintiff adds the following eight Defendants to this suit, accusing them of being part of the same conspiracy alleged in this action and 1:22-cv-290-JLT-SAB: (1) E.

Moreno, a prison official; (2) Valerie R. Chrissakis, a state court judge; (3) Michael J. Reinhart, a state court judge; (4) Nocona Soboleski, identified as an officer of the court and elsewhere as a state court clerk; (5) the Kings County Sheriff's Department (KCSD); (6) Keith Lee Fagundes, whom Plaintiff indicates is a state district attorney; (7) United States Magistrate Judge Stanley Boone; and (8) United States District Judge Jennifer Thurston.

### III.     SUMMARY OF PLAINTIFF'S AMENDED COMPLAINT

Plaintiff's amended complaint lists seventeen total Defendants: (1) CDCR, (2) CSATF, (3) Warden Theresa Cisneros, (4) Captain Anthony Baer, (5) Sergeant Anthony Jimenez, (6) Sergeant Elaine Lopez, (7) Litigation Coordinator Jason Barba, (8) Office Technician Gilda Lepe, and (9) Lieutenant Joseph Brainard, (10) "CSR" Staff Member E. Moreno, (11) Judge Valerie R. Chrissakis, (12) Judge Michael J. Reinhart, (13) Court Clerk Nocona Soboleski, (14) KCSD, (15) District Attorney Keith Lee Fagundes, (16) Magistrate Judge Boone; and (17) District Judge Thurston. For his general recitation of facts, Plaintiff states as follows:

On September 22, 2021, while at CSATF, Baer ordered Plaintiff and another inmate, Brown, to be taken into custody, strip searched, and held "illegally" in a holding cage, where Plaintiff was held for about thirty to forty-five minutes.[1] Jimenez asked Plaintiff if he knew why he was being held. Plaintiff did not know and asked why. Jimenez accused Plaintiff of speaking "illegally through JPay" with Brown and that Plaintiff was there because he had helped other inmates with their appeals and legal work, including helping Brown with "602 complaints" against Program staff. Jimenez further said that Brown was giving Plaintiff too much confidential information, which was a breach of security. Jimenez told Plaintiff that his cell was being searched, calling it routine for situations like this, and telling him he would be released once the search was finished.

Plaintiff states that he was helping Brown with appeals regarding staff misconduct, stating that Lepe abused her authority by setting up inmates working in the Program Office because the inmates started reporting on staff or because inmates would not give up

---

[1] For readability, minor alterations, such as correcting misspellings, have been made to some of Plaintiff's quotations without indicating each change.

information on fellow inmates. These targeted inmates receive RVRs with false charges and can be removed from the Program Office and replaced by other inmates who will comply with staff requests.

After Plaintiff was released back to the yard, the next day Jimenez stole Plaintiff's "intellectual property," elsewhere identified as a "tablet," out of spite. Plaintiff then saw Baer and complained about being held in the cage for assisting inmates with their appeals. Baer responded that he was the one who ordered this to happen and he would talk to Jimenez.

On October 1, 2021, Plaintiff received a falsified RVR, "turned to a counseling chrono from C/O Taylor," which was generated to retaliate against Plaintiff. The RVR contained false statements from Jimenez about Plaintiff illegally communicating with Brown through a customer account with the name "Tiannah Jaiola." Jimenez also falsely stated that the account was being used to relay information regarding staff, causing a security breach. Plaintiff states that Tiannah Jaiola has never been on his contact list or used to send messages to another inmate. Plaintiff claims this is part of a pattern within the CDCR and at CSATF to falsify RVRs against inmates to retaliate against them.

Jimenez had no penological justification to take his tablet. The information Plaintiff and Brown shared "in kite form and verbal[ly]" was about Brown's appeals, concerning the misconduct of Lepe. Jimenez retaliated against Plaintiff to cover up the misconduct of Lepe and Baer.

CDCR, CSATF, Cisneros, Baer, Jimenez, Lopez, Barba, Lepe, and Brainard engaged in a criminal conspiracy, denying Plaintiff due process. Barba obstructed justice by covering up the criminal conspiracy on behalf of Baer, Jimenez, and Lopez. The first instance was where Plaintiff wrote Barba for the restoration of his property while giving notice of the criminal conduct occurring on the yard. Although Barba was the "legal representative" for Defendants and is responsible to report crimes, Barba only told him to submit a grievance. Plaintiff sent Barba deposition questions to serve Jimenez and Lopez for a proper defense in the appeals process, but Barba obstructed justice stating that CSATF had not been served a notice of deposition even though Plaintiff attached it with his questions. Plaintiff indicates that he was

6

punished without a hearing.

Upon filing an appeal, Barba "did the interview." Brainard falsified the response, stating that Plaintiff made statements about "speaking to [his] attorney if they want to ask me questions." Brainard "intercepted all grievances written upon Defendant Jimenez and Lopez in a continued conspiratorial act [and] aided and abetted their criminal acts." Brainard had a ministerial duty as a supervising authority to send the appeals of staff misconduct to the Office of Internal Affairs and to report their misconduct. But Brainard intercepted the appeals to cover up the criminal acts of Jimenez and Lopez by falsifying the decision responses with "misguided information." Further, Brainard never interviewed Plaintiff about his issues or called appeal witnesses who could have stated that Jimenez is a liar.

Court Clerk Soboleski, Judge Chrissakis, Judge Reinhart, (KCSD), Magistrate Judge Boone, and District Judge Thurston colluded with CDCR and aided and abetted in the deprivation of his civil rights. On January 17, 2022, Plaintiff sent the "Municipal Court in Kings County," KCSD, District Attorney Fagundes, and Court Clerk Soboleski a criminal complaint for processing, filing, and enforcement.

On January 25, 2022, Court Clerk Soboleski responded on a two-page form, telling Plaintiff he needed to file a petition for writ of habeas corpus when the complaint did not involve any such issue. Thus, Plaintiff was denied meaningful access to the court.

On January 27, 2022, Plaintiff wrote Court Clerk Soboleski, requesting proof of service of his criminal complaint and wrote the same letters to KCSD and District Attorney Fagundes; however, they refused to answer, process, and file his criminal complaint.

On February 1, 2022, Plaintiff received an open manilla envelope containing the returned criminal complaint with a two-page form with notes from Court Clerk Soboleski declining to file the criminal complaint, which refusal was a criminal act. "Plaintiff sent a complaint upon Defendant Soboleski to Defendant Reinhart. Documents were never stamped by the Court with a date they were received."

Moreno conspired with CDCR, CSATF, Baer, Jimenez, Lopez, Barba, Lepe, Brainard to continue the criminal retaliation "due to Plaintiff being a litigant and having multiple

complaints upon his counterparts and buddies." Moreno "put Plaintiff up for CCI (Tehachapi) knowing that they are notorious and have a history of retaliating on inmates who are litigants and filing paperwork on officers' misconduct."

Judge Chrissakis aided and abetted "in the criminal acts" after Plaintiff filed a supplemental writ of mandate, with Plaintiff's case being dismissed. Judge Chrissakis colluded with Court Clerk Soboleski and Judge Reinhart to dismiss Plaintiff's petition for writ of mandate.

On March 2, 2022, Judge Chrissakis "made a ruling on a writ of mandate with misguided/disinformation and reason in the dismissal." Judge Reinhart ignored Court Clerk Soboleski's misconduct, leading to him committing the criminal act of aiding and abetting Court Clerk Soboleski's criminal conduct.

Judge Chrissakis and Judge Reinhart acted in concert with Court Clerk Soboleski in a conspiracy to inflict a wrong upon Plaintiff and their actions are a blatant neglect of their performance to of their ministerial duties.

Citing the "objections" Plaintiff filed in 1:22-cv-290-JLT-SAB, which complained about his action being misconstrued as falling under § 1983, Plaintiff states that Magistrate Judge Boone "went all in to protect the Defendants in this case." Magistrate Judge Boone knowingly made a ruling on his criminal complaint with "misguided/disinformation."

District Judge Thurston and Magistrate Judge Boone issued orders adding to and altering the meaning of case law and statutes "just to accomplish a cover up of the Court's Criminal Acts." Plaintiff complains that District Judge Thurston even "manipulated" the title of his filing by calling it a motion for reconsideration rather than treating it as objections.

From these allegations, Plaintiff brings seven causes of action. For his first cause of action, Plaintiff alleges that Defendants CDCR, CSATF, Cisneros, Baer, Jimenez, Lopez, Barba, Lepe, Brainard, Moreno, Judge Chrissakis, Judge Reinhart, Court Clerk Soboleski, KCSD, District Attorney Fagundes, Magistrate Judge Boone, and District Judge Thurston were involved in a conspiracy to illegally confiscate his property, detain him, retaliate against him, and deny him due process. Plaintiff cites over twenty of California's constitutional provisions

that he believes Defendants violated, including his right to freely express himself and his right to be free from unreasonable seizures. Additionally, Plaintiff alleges that Defendants violated a host of California and Federal criminal statutes, including 18 U.S.C. § 241 (addressing conspiracy against federal rights) and California Penal Code § 125 (addressing unqualified statements that one does not know to be true).

For his second cause of action, Plaintiff alleges that, by order of Baer, he was unlawfully seized with a retaliatory motive.

For his third cause of action, Plaintiff alleges that Jimenez unlawfully seized his property with a retaliatory motive.

For his fourth cause of action, Plaintiff alleges that Court Clerk Soboleski, Judge Chrissakis, Judge Reinhart, KSCD, District Attorney Fagundes, Magistrate Judge Boone, and District Judge Thurston denied his right of access to the courts and committed criminal acts that violated his First and Fourteenth Amendment rights.

For his fifth cause of action, Plaintiff alleges that Court Clerk Soboleski, Judge Chrissakis, Judge Reinhart, KSCD, District Attorney Fagundes, Magistrate Judge Boone, and District Judge Thurston became principals by not reporting the criminal activities of others and deprived him of the right to file charges on criminals that committed crimes against him because they were peace officers. He also alleges that they committed criminal acts that violated his Fourteenth Amendment rights.

For his sixth cause of action, Plaintiff alleges that Defendants CDCR, CSATF, Cisneros, Baer, Jimenez, Lopez, Barba, Lepe, Brainard, Moreno, Judge Chrissakis, KCSD, District Attorney Fagundes, Magistrate Judge Boone, and District Judge Thurston have a legal duty to refrain from criminal actions that deters his constitutionally protected rights.

For his seventh cause of action, Plaintiff alleges that Defendants CDCR, CSATF, Cisneros, Baer, Jimenez, Lopez, Barba, Lepe, Brainard, Moreno, Judge Chrissakis, KCSD, District Attorney Fagundes, Magistrate Judge Boone, and District Judge Thurston committed criminal acts with, at a minimum, an expectation to intimidate and/or scare him to such a degree as to silence and deter and prevent him from assisting others and to deter him from

reporting future criminal acts within his institution.

As for relief Plaintiff seeks: (1) a temporary restraining order preventing Defendants CDCR, CSATF "to stop transfer to CCI (Tehachapi) punishment prison for inmate litigants"; (2) a court order directing the Attorney General that Defendants have been accused of crimes, which prevents Defendants from being represented by the Attorney General, which is allowed to only represent Plaintiff since he is the victim; (3) millions in monetary damages; and (4) for Defendants to "be prosecuted for the crimes committed by Defendants in this Court of law and handed down the appropriate punishment of imprisonment provided by law."

## IV.   ANALYSIS OF PLAINTIFF'S AMENDED COMPLAINT

### A.  Section 1983

While Plaintiff labels his complaint as an "amended complaint for the deprivation of civil rights," he relies on various criminal statutes, including 18 U.S.C. §§ 241, 242, rather than any civil rights statute. Considering that the Court's prior order directing Plaintiff to specifically identify the nature of his action as a § 1983 complaint (if that was the action that Plaintiff wanted to assert), and that Plaintiff has not done so, it is clear that Plaintiff does not wish to invoke § 1983. However, because § 1983 otherwise proves informative for this suit, the Court notes the following standards for such actions.

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

### B.  Duplicative Claims Against Defendants (1) Cisneros; (2) Baer; (3) Jimenez; (4) Lopez; (5) Barba; and (6) Brainard.

As noted earlier, shortly after Plaintiff filed his petition for writ of mandate, he asserted very similar claims in a complaint filed in 1:22-cv-290-JLT-SAB. And after filing his complaint in 1:22-cv-290-JLT-SAB, Plaintiff filed an amended complaint in this action alleging civil rights violations based on criminal statutes. Comparing the operative amended complaint in this case to Plaintiff's earlier-filed complaint in 1:22-cv-290-JLT-SAB reveals duplicative claims against six Defendants: (1) Cisneros; (2) Baer; (3) Jimenez; (4) Lopez; (5)

Barba; and (6) Brainard.

Referred to as the doctrine of claim-splitting, "[p]laintiffs generally have 'no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.'" *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) (quoting *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977)), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008).

"To determine whether a suit is duplicative, we borrow from the test for claim preclusion."[2] *Adams*, 487 F.3d at 688. "'[T]he true test of the sufficiency of a plea of 'other suit pending' in another forum [i]s the legal efficacy of the first suit, when finally disposed of, as 'the thing adjudged,' regarding the matters at issue in the second suit.'" *Id.* (second alteration in original) (quoting *The Haytian Republic*, 154 U.S. 118, 124 (1894)). "Thus, in assessing whether the second action is duplicative of the first, we examine whether the causes of action and relief sought, as well as the parties . . . to the action, are the same." *Adams*, 487 F.3d at 689; *see also Serlin v. Arthur Anderson & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) ("[A] suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions." (internal quotation marks omitted)). The following transaction test is used to determine whether the causes of action are the same:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Adams*, 487 F.3d at 689 (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir.1982)). The last criterion—whether the two suits arise out of the same transaction nucleus of facts—is the most important. *Id.* "After weighing the equities of the case, the district court may exercise its discretion to dismiss a duplicative later-filed action, to stay that action

---

[2] The primary difference between dismissing a case as duplicative and dismissing a case under the doctrine of claim preclusion is that a final judgment need not have been entered to dismiss a case as duplicative while claim preclusion requires a final judgment on the merits. *See Cook v. C.R. England, Inc.*, 2012 WL 2373258, at *3 (C.D. Cal. June 21, 2012) (noting that determination of whether suit is duplicative assumes that the first suit was final).

12

pending resolution of the previously filed action, to enjoin the parties from proceeding with it, or to consolidate both actions." *Id.* at 688.  The claim-splitting doctrine is a discretionary one, intended to give judges flexibility to "promote[] judicial economy." *Id.* at 692; *see Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952) ("Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems.").

While the instant action was initiated first with the filing of Plaintiff's petition for mandate, the Court nevertheless applies the law regarding claim splitting because the operative complaint in this action was filed after the operative complaint in the other action. Notably, courts comparing claim splitting to the related doctrine of claim preclusion have noted that "[t]he crucial date [for application of the doctrines] is the date the complaint was filed." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000); *cf. Adams* , 487 F.3d at 693 (noting that Court "might have found an abuse of discretion [in dismissal of lawsuit as duplicative] had the claims in Adams's second suit been based on events occurring *subsequent to the filing of her complaint* in the first action") (emphasis added). Here, given that the operative complaint asserting duplicative claims was filed after the filing and screening of Plaintiff's complaint in 1:22-cv-290-JLT-SAB, the pragmatic concerns associated with claims splitting apply with equal force despite this action having been filed first. Specifically, if the claims presented in the operative amended complaint in this action and the screened claims in 1:22-cv-290-JLT-SAB are duplicative, it would waste judicial resources for the Court to screen them for a second time. *See Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011) ("By spreading claims around in multiple lawsuits in other courts or before other judges, parties waste scarce judicial resources and undermine the efficient and comprehensive disposition of cases.") (internal citation and quotation marks omitted).

Here, after reviewing the operative amended complaint and Plaintiff's criminal complaint, there is no doubt that Plaintiff brings duplicative claims. Looking first to whether the causes of action are the same, the Court begins with the most important criterion—whether the claims share a common transactional nucleus of facts.

13

Both filings largely concern the events stemming from Plaintiff's September 22, 2021 detention in a holding cage while his cell was searched, with the pertinent factual allegations often being nearly identical. (*Compare* (ECF No. 1, p. 2)) ("On September 22, 2021 Anthony Baer ordered to have the Petitioner, and an Inmate Brown #Fl7493, to be taken in to custody, stripped searched and held illegally in a holding cage under duress and coercion.") *with* (1:22-cv-290-JLT-SAB (ECF No. 1, p. 2)) ("On September 22, 2021 Defendant Anthony Baer ordered to have the plaintiff taken in to custody, stripped searched and illegally held within a cage under duress and coercion and retaliation."). And in both cases, Plaintiff alleges that his tablet was wrongfully taken due to him improperly using JPay to communicate with other inmates. Additionally, Plaintiff alleges a series of retaliatory events, such as falsified RVR documents, based on his helping other inmates with filing grievances.

Next considering the remaining criterion, a judgment on such claims in one action would affect rights or interests in the other. For example, if Defendants received a successful judgment on the allegations in 1:22-cv-290-JLT-SAB, such might prevent Plaintiff from pursuing his claims in this action. Moreover, because both actions largely involve the same events, the evidence would be mostly the same. Lastly, in both actions, Plaintiff generally asserts that Defendants improperly retaliated against him and violated his due process rights, and generally committed a host of criminal violations for which Plaintiff seeks to hold them criminally liable. *See Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 887 (9th Cir. 2022) (noting that, although cases "involve[d] somewhat different legal theories and a somewhat broader range of related conduct" did not alter the fundamental identity of the suits under the same-transaction test). Lastly, as to the parties, both actions share the following six Defendants: (1) Cisneros; (2) Baer; (3) Jimenez; (4) Lopez; (5) Barba; and (6) Brainard.

Thus, weighing the equities, the Court will recommend that the claims against Defendants Cisneros, Baer, Jimenez, Lopez, Barba, and Brainard be dismissed as duplicative. *Adams*, 487 F.3d at 692 (concluding that district court did not abuse discretion in dismissing later filed complaint "where one district court had duplicative suits contemporaneously pending on its docket"). These claims have already been screened in 1:22-cv-290-JLT-SAB, and

14

Plaintiff has been directed to file an amended complaint. Rescreening the same claims would only waste judicial resources and give Plaintiff another opportunity to have rejected claims reconsidered. *Id.* at 693 (upholding dismissal where plaintiff "had a full and fair opportunity to raise and litigate in her first action the claims she now asserts in this action").

### C.  Additional Bases for Dismissal

Plaintiff's duplicative claims against Defendants Cisneros, Baer, Jimenez, Lopez, Barba, and Brainard and his remaining claims against Defendants CDCR, CSATF, Lepe, Judge Chrissakis, Judge Reinhart, Court Clerk Soboleski, KCSD, District Attorney Fagundes, Magistrate Judge Boone, and District Judge Thurston fail for a variety of reasons. Specifically, all of these claims fail because Plaintiff does not identify a basis for this Court's jurisdiction, his claims are legally frivolous, and he fails to state any cognizable claim. Moreover, Defendants CDCR, CSATF, Judge Chrissakis, Judge Reinhart, Court Clerk Soboleski, District Attorney Fagundes, Magistrate Judge Boone, and District Judge Thurston are also entitled to immunity.

### 1.  Lack of subject-matter jurisdiction

Generally, Plaintiff's claims assert that the Defendants are involved in a conspiracy to target him for his litigation activities, committing crimes and violating his constitutional rights in the process. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Article III, § 2, of the Constitution delineates [t]he character of the controversies over which federal judicial authority may extend.  And lower federal-court jurisdiction is further limited to those subjects encompassed within a statutory grant of jurisdiction.  Accordingly, the district courts may not exercise jurisdiction absent a statutory basis." *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019) (alteration in original) (citations and internal quotation marks omitted).

> In 28 U.S.C. §§ 1331 and 1332(a), Congress granted federal courts jurisdiction over two general types of cases: cases that aris[e] under federal law and cases in which the amount in controversy exceeds $ 75,000 and there is diversity of citizenship among the parties.  These jurisdictional grants are known as federal-question jurisdiction and diversity jurisdiction, respectively. Each serves a distinct purpose: Federal-question jurisdiction affords parties a federal forum in

which to vindicate federal rights, whereas diversity jurisdiction provides a
neutral forum for parties from different States.

*Id.* (alteration in original) (citations and internal quotation marks omitted). A plaintiff "properly

invokes" subject-matter jurisdiction under § 1331 when he "pleads a colorable claim arising

under the Constitution or laws of the United States." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513

(2006) (internal quotation marks and citation omitted).

Section 1983 applies to allegations involving deprivations of a prisoner's constitutional

rights and confers federal question jurisdiction. *See Cortez v. Skol*, 776 F.3d 1046, 1054 n.8

(9th Cir. 2015) ("The district court had federal question jurisdiction over the § 1983 claim . . .

."). However, despite advising Plaintiff that § 1983 may provide a mechanism for his civil suit

and telling Plaintiff to clearly label his amended complaint if he desired to seek such relief,

Plaintiff has not done so. (*See* ECF No. 12). It is unclear why Plaintiff has avoided relying on

§ 1983 in his amended complaint; however, the Court notes that when Plaintiff's operative

pleading was his petition for writ of mandate, he complained that his filing was improperly

treated on the docket "as a[] 42 U.S.C. § 1983 complain to dismiss [his] petition for failure to

exhaust." (ECF No. 6). Regardless of the reason, Plaintiff is the master of his complaint, and

the Court will not require him to bring his claims under any particular legal theory. *See Thao Le

v. Cap. One Auto Fin.*, No. 18-CV-05647-BLF, 2018 WL 5778385, at *2 (N.D. Cal. Nov. 1,

2018) (noting that a plaintiff, "[a]s the master of his [c]omplaint," could choose to bring only

state law claims when his allegations might otherwise implicate Federal law).

Instead of relying on any federal civil rights statute to establish jurisdiction, Plaintiff

alleges that federal question jurisdiction exists based on various criminal statutes, foremost, 18

U.S.C. §§ 241, 242, which concern conspiracy against or deprivations of a person's rights.[3]

(ECF No. 16, p. 2). But "[t]hese criminal provisions . . . provide no basis for civil liability."

*Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (addressing §§ 241, 242). Rather,

---

[3] Plaintiff also cites jurisdiction as being based on 28 U.S.C. § 1343, which provides "original
jurisdiction of any civil action authorized by law to be commenced by any person" to address, among
other things, deprivations of constitutional rights under color of state law. However, as will be further
discussed, none of the cited criminal statutes provide for a "civil action authorized by law," and thus this
statute is inapplicable.

16

"unless a specific statute provides for a private right of action, courts have found that violations of Title 18 are properly brought by the United States government through criminal proceedings and not by individuals in a civil action." *Banuelos v. Gabler*, No. 1:18-CV-00675-LJO-SAB, 2018 WL 2328221, at *3 (E.D. Cal. May 22, 2018).

The other statutes Plaintiff relies on—18 U.S.C. §§ 1001, 1361, 1381, 1501, 1503, 1510, 1511, 1512, 1513, 1791, 1901, 1951, 1961, 2071—also do not create a private civil right of action and/or are not applicable to the facts of this case. *See Thymes v. Prime, Inc.*, No. LA-CV-1802725-JAK-JCX, 2019 WL 13026773, at *4 (C.D. Cal. June 4, 2019) (no private right of action under § 1001, which governs false statements); § 1361 (governing injury to United States' property); § 1381 (governing enticement of desertion in Armed Forces); § 1501 (governing assault on a process server); § 1503 (governing influencing or injury to jurors); *Gage v. Wells Fargo Bank, N.A., AS*, 555 F. App'x 148, 151 (3d Cir. 2014) (unpublished) (no private right of action under § 1510, which governs obstruction of criminal investigations); *Simmons v. Blumenfeld*, No. CV 14-4806-JFW (JEM), 2015 WL 13916664, at *19 (C.D. Cal. Feb. 27, 2015), *report and recommendation adopted*, 2015 WL 13916600 (C.D. Cal. Apr. 16, 2015) (no private right of action under § 1511, which governs obstruction of state or local law enforcement); *Kregzde v. Sarebanha*, No. CV 17-1220 JVB (FFM), 2017 WL 11635443, at *5 (C.D. Cal. Nov. 29, 2017) (no private right of action under § 1512, which governs witness tampering); *Bryant v. Tulare Cnty.*, No. 1:16-CV-1542-LJO-SKO, 2017 WL 1273735, at *3 (E.D. Cal. Feb. 17, 2017) (no private right of action under § 1513, which governs retaliation against a witness); § 1791 (governing provision of contraband in prison); § 1901 (governing officers of United States, who are concerned in the collection of revenues, and prohibits them from carrying on business in the funds or debts of the United States); *Rhodes v. Robinson*, No. 1:02-CV-05018-LJO, 2011 WL 6367746, at *10 (E.D. Cal. Dec. 19, 2011) (no private right of action under § 1951, which governs interference with commerce by threats or violence); *Curry v. GMAC Mortg.*, No. CV 10-08014, 2010 WL 4553503, at *2 (C.D. Cal. Nov. 3, 2010) (no private right of action under § 2071, which governs interference with documents filed with

court).[4]

Further, as to Plaintiff's attempt to compel the criminal prosecution of Defendants, "federal law does not allow a private citizen to bring a criminal prosecution against another citizen. Criminal actions are initiated by the state, not by private citizens." *Lipsey v. Reddy*, No. 1:17-CV-00569-LJOB-AM (PC), 2017 WL 4811723, at *4 (E.D. Cal. Oct. 24, 2017*), report and recommendation adopted*, 2017 WL 5070338 (E.D. Cal. Nov. 3, 2017). This is because "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Thus, "[w]hatever 'crimes' the named defendants may have been committing, they do not provide a basis for the court's jurisdiction over plaintiff's civil suit." *Selck v. Volunteers of Am.*, No. 2:21-CV-1500-MCE-KJN (PS), 2022 WL 159037, at *2 (E.D. Cal. Jan. 18, 2022), *report and recommendation adopted*, 2022 WL 396845 (E.D. Cal. Feb. 9, 2022).

Given that Plaintiff has deliberately chosen to avoid asserting any civil rights violations under an applicable civil statute, such as § 1983, and that the criminal statutes that Plaintiff relies on provide no private right of action, this Court lacks subject matter jurisdiction over Plaintiff's claims.

## 2. Frivolousness and Failure to State a Claim

As noted above, under § 1915A(b)(1) and § 1915(e)(2)(B)(i)-(ii), the Court is required to dismiss claims that are frivolous and those that fail to state a claim. A claim is legally frivolous when it is "based on an indisputably meritless legal theory." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Likewise, a claim lacking an arguable basis in law also fails to state a claim. *Id.* at 328. Inarguable legal claims include "claims of infringement of a legal interest which clearly does not exist." *Id.*

As discussed above in connection with Plaintiff's failure to establish a jurisdictional

---

[4] The Court acknowledges that the Racketeer Influenced and Corrupt Organizations Act (RICO) creates a private right of action through 18 U.S.C. § 1964(c) for persons injured in their business or property by a violation of § 1962, which addresses racketeering activities. Plaintiff cites neither statute, but does cite § 1961, which is the definition section for the chapter. Without any developed explanation of how RICO applies here, Plaintiff has failed to plead a colorable civil claim invoking the Court's subject-matter jurisdiction.

basis for his claims, Plaintiff's assertion that Defendants violated criminal statutes does not give right to a private right of action, and thus his complaint is based on indisputably meritless legal theories. Accordingly, Plaintiff's claims are legally frivolous and also fail to state a cognizable claim for relief. *See Eisner v. Hollister*, No. 2:21-CV-2337-TLN-KJN (PS), 2022 WL 88486, at *2 (E.D. Cal. Jan. 7, 2022) (concluding that complaint premised on violations of criminal statutes was frivolous); *Vieira v. Schwarzenegger*, No. 1:12-CV-00044-AWI, 2012 WL 1868524, at *4 (E.D. Cal. May 22, 2012) (concluding that claims premised on violations of criminal statues failed to state a cognizable claim for relief).

### 3. Immunity

In addition to the other grounds for dismissal, Defendants CDCR, CSATF, Judge Chrissakis, Judge Reinhart, Court Clerk Soboleski, District Attorney Fagundes, Magistrate Judge Boone, and District Judge Thurston are entitled to immunity.

Beginning with the prison Defendants, CDCR and CSATF, "[t]he Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." *Aholelei v. Dept. of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). In addition, California prisons are entitled to Eleventh Amendment immunity. *Lopez v. Wasco State Prison*, 2008 WL 5381696, at *4 (E.D. Cal. Dec. 22, 2008) (citing *Keel v. California Dept. of Corrections and Rehabilation*, 2006 WL 1523121, at *2 (E.D. Cal. 2006)). However, the Eleventh Amendment does not bar suits seeking damages against state officials in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003). Additionally, the Eleventh Amendment does not bar suits for prospective declaratory or injunctive relief against state officials in their official capacities. *Ex Parte Young*, 209 U.S. 123, 155-56, (1908); *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007).

Here, Plaintiff's complaint seeks, among other things, monetary damages against Defendants CDCR and CSATF. Accordingly, such claims are barred by Eleventh Amendment immunity. *See Hayes v. California Dep't of Corr. & Rehab.*, No. 2:19-CV-09513-SVW (SK), 2020 WL 3963882, at *1 (C.D. Cal. Apr. 28, 2020). ("But the CDCR and all its prisons are

arms of the state of California and thus immune from suit under the Eleventh Amendment.").

Next, Defendants Judge Chrissakis, Judge Reinhart, Court Clerk Soboleski, District Attorney Fagundes, Magistrate Judge Boone, and District Judge Thurston are also immune from relief. "It has long been established that judges are absolutely immune from liability for acts 'done by them in the exercise of their judicial functions.'" *Miller v. Davis*, 521 F.3d 1142, 1145 (9th Cir. 2008) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871)); *see Moore v. Brewster*, 96 F.3d 1240, 1243 (9th Cir. 1996) (noting that Federal judges are entitled to absolute judicial immunity). And immunity is overcome only in two circumstances:

> First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. *Forrester v. White*, 484 U.S., at 227–229, 108 S.Ct., at 544–545; *Stump v. Sparkman*, 435 U.S., at 360, 98 S.Ct., at 1106. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. *Id.*, at 356–357, 98 S.Ct., at 1104–1105; *Bradley v. Fisher*, 13 Wall., at 351.

*Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Further, the Ninth Circuit has extended absolute quasi-judicial immunity "to court clerks and other non-judicial officers" when undertaking acts that are part of the judicial function. *In re Castillo*, 297 F.3d 940, 952 (9th Cir. 2002), as amended (Sept. 6, 2002).

Moreover, "[p]rosecutorial immunity has developed along much the same lines as judicial immunity. Immunity extends to protect a prosecutor who acts within his or her authority and in a quasi-judicial capacity." *Ashelman v. Pope*, 793 F.2d 1072, 1076 (9th Cir. 1986). And "[w]here a prosecutor acts as an advocate in initiating a prosecution and in presenting the state's case, absolute immunity applies." *Id.* (internal citations and quotation marks omitted).

With these standards in mind, Judges Chrissakis, Reinhart, Boone, and Thurston are entitled to immunity for denying or rejecting Plaintiff's state and Federal court filings. Although Plaintiff repeatedly asserts that such actions were in excess of the Court's jurisdiction because they ignored legal authority that he believes is controlling, Plaintiff misunderstand the nature of judicial immunity. Notably, even if a judge renders a legally flawed decision (which Plaintiff has not shown for any Judge in this case), that does not mean that the judge has acted

outside of his or her jurisdiction. *See Stump*, 435 U.S. at 359-60 ("Because the court over which Judge Stump presides is one of general jurisdiction, neither the procedural errors he may have committed nor the lack of a specific statute authorizing his approval of the petition in question rendered him liable in damages for the consequences of his actions."). That is not to say that there is no recourse for challenging the rulings of these judges. Plaintiff may challenge those rulings by appealing them. However, he cannot sue the judges for damages based on their rulings.

Likewise, Court Clerk Soboleski is entitled to immunity for returning Plaintiff's criminal complaint or otherwise declining to accept it. *See Mullis v. U.S. Bankr. Ct. for Dist. of Nevada*, 828 F.2d 1385, 1390 (9th Cir. 1987) (concluding that court clerks were entitled to immunity for refusing to accept an amended petition). Lastly, District Attorney Fagundes is entitled to immunity for declining to file criminal charges. *See Demery v. Kupperman*, 735 F.2d 1139, 1144 (9th Cir. 1984) (noting that prosecutorial immunity applied to prosecutor's "conferring with potential witnesses for the purpose of determining whether to initiate proceedings").

## V.    CONCLUSION AND RECOMMENDATIONS

The Court concludes that Plaintiff's amended complaint should be dismissed because some claims are duplicative; Plaintiff's claims fail to establish this Court's subject matter jurisdiction, are frivolous, fail to state a cognizable claim; and some of the Defendants are entitled to immunity. Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "the court should freely give leave [to amend] when justice so requires." However, "[d]ismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008).

Allowing Plaintiff to amend his complaint in this action would result in duplicative claims proceeding simultaneously in two courts, wasting judicial resources. Similarly, despite the Court advising Plaintiff of a potentially applicable statute, § 1983, on which to base jurisdiction of his claims, Plaintiff has continued to improperly assert claims based on the alleged violation of criminal statutes, thus depriving the Court of subject-matter jurisdiction.

21

Moreover, Plaintiff's claims are frivolous, fail to state any cognizable claim, and are brought against some immune Defendants. Thus, it appears that further leave to amend would be futile.

Accordingly, IT IS RECOMMENDED as follows:

1.      Plaintiff's amended complaint be dismissed without leave to amend as duplicative, for lack of subject-matter jurisdiction, for frivolousness, for failure to state a claim, and for seeking relief against immune Defendants.

2.      The Clerk of Court be directed, in light of Plaintiff's operative amended complaint,[5] to term as no longer pending Plaintiff's supplement to his writ of mandate. (ECF No. 9).

3.      The Clerk of Court be directed to close this case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __June 27, 2022__                    /s/ Erica P. Grosjean
                                              UNITED STATES MAGISTRATE JUDGE

---

[5] Plaintiff's operative amended complaint includes, as did his supplement to his writ of mandate, a request for a temporary restraining order prohibiting his transfer to CCI Tehachapi. However, "[i]n the absence of a complaint setting out the basis for jurisdiction, the court lacks the jurisdiction to grant a temporary restraining order." *Camillos v. U.S. Bank Nat. Ass'n*, No. 5:11-CV-05228 EJD, 2011 WL 5122619, at *2 (N.D. Cal. Oct. 27, 2011).